IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| RONALD C. CRANFILL, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:10CV925 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Ronald C. Cranfill, Jr., brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain review of a final decision of the Commissioner of Social Security denying his claims for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and Title XVI of the Act.[1] The Court has before it the certified administrative record and cross-motions for judgment.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Act, 42 U.S.C. § 405(g).

## I. PROCEDURAL HISTORY

Plaintiff filed applications for a POD, DIB, and SSI benefits on November 19, 2008 (protective filing date October 6, 2008), alleging a disability onset date of March 15, 2008. (Tr. 115, 122, 139, 143.)[2] The applications were denied. (*Id.* at 46-54.)[3] Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 57, 80-81.) At the February 11, 2010 hearing were Plaintiff, his attorney, and a vocational expert ("VE"). (*Id.* at 22-45.) The ALJ determined that Plaintiff was not disabled under the Act. (*Id.* at 9-17.) On October 8, 2010 the Appeals Council denied Plaintiff's request for review, making the ALJ's determination the Commissioner's final decision for purposes of review. (*Id.* at 1-5.)

## II. FACTUAL BACKGROUND

Plaintiff was thirty-seven years old on the alleged disability onset date. (*Id.* at 15.) He finished the eighth grade and his past relevant work was as a carpenter and truck driver (*Id.* at 27-31).

## III. STANDARD FOR REVIEW

The Commissioner held that Plaintiff was not under a disability within the meaning of the Act. Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). This Court's review of that decision is limited to determining whether there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*,

---

[2] Transcript citations refer to the administrative record.
[3] It is unclear from the administrative record whether Plaintiff sought reconsideration of the initial denial of his applications for benefits. However, where exhaustion is concerned, the Supreme Court has concluded that the only nonwaivable requirement is that a claim for benefits be presented to the agency. *See Bowen v. City of New York*, 476 U.S. 467, 483 (1986) (citation omitted). Here, Plaintiff's applications have clearly been presented to the Commissioner and Defendant does not raise the issue of exhaustion. In fact, Defendant's Answer (Docket Entry 8) concedes that Plaintiff has exhausted all of his administrative remedies. (*Id.* ¶ 3.)

2

993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hunter*, 993 F.2d at 34 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It "consists of more than a mere scintilla" "but may be somewhat less than a preponderance." *Id.* (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

The Commissioner must make findings of fact and resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 497, 599 (4th Cir. 1979)). The Court does not conduct a de novo review of the evidence nor of the Commissioner's findings. *Schweiker*, 795 F.2d at 345. In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, to make credibility determinations, or to substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Hays*, 907 F.2d at 1456). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." *Craig*, 76 F.3d at 589 (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). The issue before the Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See id.*; *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

3

# IV. THE ALJ'S DISCUSSION

The Social Security Regulations define "disability" for the purpose of obtaining disability benefits as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment[4] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).[5] To meet this definition, a claimant must have a severe impairment which makes it impossible to do previous work or any other substantial gainful activity[6] that exists in the national economy. 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

## A. The Five-Step Sequential Analysis

The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. §§ 404.1520, 416.920. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The ALJ must determine in sequence:

(1) Whether the claimant is engaged in substantial gainful activity (*i.e.*, whether the claimant is working). If so, the claimant is not disabled and the inquiry ends.

(2) Whether the claimant has a severe impairment. If not, then the claimant is not disabled and the inquiry ends.

---

[4] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423 (d)(3), 1382c(a)(3)(D).

[5] The statutes and regulations applicable to disability determinations for DIB and SSI are generally the same. The provisions relating to DIB are found in 42 U.S.C. subch. II, §§ 401, *et seq.* and 20 C.F.R. pt. 404, and those relating to SSI in 42 U.S.C. subch. XVI, §§ 1381, *et seq.* and 20 C.F.R. pt. 416.

[6] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

4

(3) Whether the impairment meets or equals to medical criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a finding of disability without considering vocational criteria. If so, the claimant *is* disabled and the inquiry is halted.

(4) Whether the impairment prevents the claimant from performing past relevant work. If not, the claimant is not disabled and the inquiry is halted.

(5) Whether the claimant is able to perform any other work considering both his residual functional capacity[7] and his vocational abilities. If so, the claimant is not disabled.

20 C.F.R. §§ 404.1520, 416.920.

Here, the ALJ reached the fifth step of the sequence, at which point he determined that Plaintiff was not disabled from the alleged onset date to the date of the decision. (Tr. 16.) The ALJ first determined that Plaintiff had not engaged in substantial gainful activity at any time since his alleged onset date of March 15, 2008. (*Id.* at 11.) The ALJ next found in step two that Plaintiff had severe impairments: deep vein thrombosis, depression, and a history of substance abuse. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1. (*Id.*)

---

[7] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of his impairment and any related symptom (*e.g.*, pain). *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also Hines v Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981).

5

### B. Residual Functional Capacity Determination

Prior to steps four and five, the ALJ determined Plaintiff's RFC based on the ALJ's evaluation of the evidence, including Plaintiff's testimony and the findings of treating and examining health care providers. (*Id.* at 12-15.) Based on the evidence as a whole, the ALJ determined that Plaintiff retained the RFC to perform light work except that he could only occasionally push, pull, climb, balance, kneel, crouch, and crawl. (*Id.* at 13.) The ALJ concluded further that Plaintiff could not work near vibration, odors, hazardous machinery, or unprotected heights. (*Id.*) Last, the ALJ determined that Plaintiff could perform simple, routine, repetitive work in a low stress environment with limited contact with others. (*Id.*) In reaching a conclusion about Plaintiff's RFC, the ALJ considered the evidence and found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . residual functional assessment." (*Id.* at 14.)

### C. Past Relevant Work

The ALJ found in step four that Plaintiff was not capable of performing the functional demands of his past relevant work as a carpenter or truck driver. (*Id.* at 15.) The ALJ concluded that these positions were "medium, semi-skilled jobs" that Plaintiff could no longer perform "because he is limited to light work, and simple, routine, repetitive tasks." (*Id.*)

### D. Adjustment to Other Work

The claimant bears the initial burden of proving the existence of a disability. 42 U.S.C.

6

§ 423(d)(5); 20 C.F.R. §§ 404.1512, 416.202-03; *Smith v. Califano*, 592 F.2d 1235, 1236 (4th Cir. 1979). Once the claimant has established at step four that he cannot do any work he has done in the past because of his severe impairments, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy which the claimant could perform consistent with his RFC, age, education and past work experience. *Hunter*, 993 F.2d at 35; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980). An ALJ may, and frequently does, rely on the testimony of a VE in satisfying this burden. *See* 20 C.F.R. §§ 404.1566(e), 416.966(e); *Hammond v. Apfel*, 5 Fed. App'x 101, 105 (4th Cir. 2001) (unpublished). In order for a VE's opinion to be relevant, it must be in response to a proper hypothetical question that fairly sets out all of the claimant's impairments. *Walker v. Bowen*, 889 F.2d 47, 50-51 (4th Cir. 1989); *see also Mickles v. Shalala*, 29 F.3d 918, 929 n.7 (4th Cir. 1994) (concluding that the hypothetical presented to the VE need only include the impairments and limitations that the ALJ finds credible); *Fisher v. Barnhart*, 181 Fed. App'x 359, 365 (4th Cir. 2006) (unpublished) (concluding that a hypothetical question is unimpeachable if it adequately reflects an RFC for which the ALJ had sufficient evidence).

### *The VE's Testimony*

Here, during Plaintiff's hearing, the ALJ posed the following hypothetical to the VE:

> All right, Doctor, assume that I find on the basis of the credible record before me for a full relevant period that the claimant['s] demonstrated exertional impairments reflect a Residual Functional Capacity for a wide range of light and sedentary work on a substantial basis, and I assume further that he has demonstrated certain, significant non-exertional impairments, principally relating to a history of pulmonary infarctions and a deep vein thrombosis with treatment with

7

blood thinners and depression, and that these conditions would
limit one to unskilled, simple, routine, repetitive work in a low
stress environment with limited contact with others. One would
be limited to work entailing occasional pushing and pulling with
the arms, climbing, balancing, stooping, kneeling, crouching, and
crawling. There could be no extremes of heat or cold, no
vibration, no exposure to fumes and odors, and no hazardous
equipment or unprotected heights. Taking into account those
limitations and the claimant's age, education, and past relevant
work experience, would there be jobs one could do with these
limitations?

(Tr. 42.)

The VE, in response, testified that:

> Well there could be work functions for considerations to be
> sustained attendance and attention. Probably the best setting
> would be one where the environment is reasonably
> well-controlled so he could be bench work or assembly type work
> and such activities as working with electrical accessories under
> 729.687-010 at the light, unskilled level, options to change
> positions periodically, 2600 minimal positions in North Carolina
> and in the United Sates and other regions of the country.
> Additionally, again, someone who's involved with the assembly
> or pulling parts of light fixtures, under 723.264-018, light to
> unskilled with some minimal 1600 positions . . . [j]ust in North
> Carolina, and possibly someone who's involved in just general
> small product assembly work which is 729.687-030, again light
> and unskilled. With a reasonable job base in excess of some
> 4000 positions just in North Carolina. All these jobs are located
> in substantial numbers elsewhere and this is an illustrative list and
> unexhaustive possibilities.

(*Id.* at 42-43.) At this point, the ALJ asked the VE whether his "descriptions of these jobs

[were] consistent with how they're described in the Dictionary of Occupational Titles?"

"Yes, sir," the VE responded. (*Id.* at 43.)

Plaintiff's counsel then queried if Plaintiff could perform these positions if the ALJ

8

found that Plaintiff's concentration was impaired such that Plaintiff "must reread a page four times" "or flips the channel on the TV after 10 minutes." (*Id.* at 43.) While the transcript reveals that part of the VE's answer to this question was inaudible, it is clear the VE conceded that "they might be an indication of some problems with attention," though the VE noted further that "[t]here's no reading at these jobs" and that it was "kind of hard to relate to the channel switching." (*Id.*) Rather than pursue this line of questioning further, counsel then asked the VE if Plaintiff's temper might interfere with job performance, if the ALJ credited Plaintiff's testimony that "he's lost most of his jobs because he loses his temper and either walks off or gets in a fight." (*Id.* at 44.) The VE responded in the affirmative, noting that "there still has to be a reasonable relationship between an employee and a supervisor." (*Id.*)

### *The ALJ's Decision*

The ALJ found that Plaintiff was 37 years old on his alleged disability onset date which is defined as a "younger individual age 18-44," with a limited education and the ability to communicate in English. (*Id.* at 15.) The ALJ found that based on Plaintiff's age education, work experience and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform and that Plaintiff was not disabled from March 15, 2008, the alleged onset date, through the date of the decision. (*Id.* at 15-16.)

In rendering his decision, the ALJ relied on the VE's testimony in concluding that jobs exist in the national economy that Plaintiff could perform. (*Id.* at 15-16.) The ALJ stated:

> To determine the extent to which [Plaintiff's] limitations erode
> the unskilled light occupational base, the Administrative Law

9

> Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as a bench assembler, electrical (DOT# 729.689-101) light, unskilled, with 2600 jobs in NC; light fixture assembler (DOT# 723.684-018) light, unskilled, with 1600 jobs in NC; and general small product assembler (DOT# 739.687.030) light, unskilled, with 4000 jobs in NC.
>
> Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.
>
> Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

(*Id.* at 16.)

Clarification is in order at this point. First, the VE testified that a person with the limitations contained in the ALJ's hypothetical could perform work involving the assembly or pulling of light fixtures and small product assembly work. (*Id.* at 43) In so testifying the VE referenced, respectively, sections 723.264-018 and 729.687-030 from the *Dictionary of Occupational Titles* ("DOT"). However, the first number (723.264-018) does not exist in the DOT. While the second number (729.687-030) is set forth in the DOT, it references a utilities salvager, and not small product assembly work. *See* DOT 729.687–030, Salvager, 1991 WL 679738. Instead, as reflected correctly in the ALJ's decision (Tr. 16), the job of an

10

assembler in the lighting fixtures industry is listed in DOT section 723.684-018, DOT 723.684–018, Assembler II (Lighting Fixtures Industry), 1991 WL 679521, and a small products assembly worker is listed in DOT section 739.687-030, DOT 739.687–030, Assembler, Small Products II, 1991 WL 680180. Neither party has made an issue of the VE's misstatements nor of the ALJ's recognition and correction of these misstatements. And, given that the VE's testimony and the ALJ's decision are both consistent with the DOT as to the type of job (assembly or pulling of light fixtures and small product assembly work), the ALJ's decision is supported by substantial evidence in this regard. *See Fisher v. Barnhart*, 181 Fed. App'x 359, 366 (4th Cir. 2006) (unpublished) ("We conclude that the only reasonable interpretation of the entirety of the vocational expert's testimony is that he misremembered and, consequently, misspoke the job titles and codes in question. The Dictionary entries he meant to mention are not in conflict with his descriptions of them.").

Second, the VE testified further that a person with the limitations contained in the ALJ's hypothetical could also perform work involving "bench work or assembly type work and such activities as working with electrical accessories under 729.687-010." (*Id.* at 42-43.) The DOT listing for job number 729.687-010 is that of "Assembler, Electrical Accessories I." *See* DOT 729.687–010, Assembler, Electrical Accessories I, 1991 WL 679733. However, the ALJ concluded that "The vocational expert testified that . . . the [hypothetical] individual would be able to perform the requirements of representative occupations such as a bench assembler, electrical (DOT# 729.689-101)." *Id.* at 16. The number recited by the ALJ (729.689-101) is not listed in the DOT, and is perhaps a typographical error on the part of the

11

ALJ's articulation of the VE's reference to the position of electrical accessories assembler, set forth in 729.687-010. This seems to be the position taken by Defendant. (Docket Entry 16 at 7-8 n.4.) Plaintiff, in turn, appears to take the position that the VE and ALJ really intended to reference the occupation of bench assembler listed in the DOT as 706.684-022. (Docket Entry 11 at 5 n.1, citing DOT 706.684–022, Assembler, Small Products I (Bench Assembler), 1991 WL 679050). This issue is ultimately immaterial. As explained below, even if the VE and ALJ intended to reference DOT 706.684-022, Plaintiff's claim still lacks merit.

## V. ANALYSIS

### A. Plaintiff's "Hazardous Machinery" Argument Lacks Merit.

The sole issue raised by Plaintiff is whether the ALJ "erred in finding Plaintiff to be capable of [performing] work that exceeds his residual functional capacity." (Docket Entry 11 at 3.) Plaintiff contends there is an unresolved conflict between the VE's testimony and the DOT and that the ALJ erred by failing to resolve this purported conflict at the fifth step of the analysis. (*Id.* at 4-6.) This is not so. Contrary to Plaintiff's argument, there is no conflict (apparent or otherwise) between the VE's testimony and the DOT, the ALJ properly assessed if Plaintiff could perform jobs existing in significant numbers in the national economy, and substantial evidence supports his step five finding.

In contending that the ALJ failed to resolve an apparent conflict between the testimony of the VE and the DOT, Plaintiff relies exclusively on the language of Social Security Ruling 00-4p. (Docket Entry 11 at 3-4 citing Social Security Ruling 00-4p, *Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions* ("SSR 00–

12

4p").) Under this Social Security Ruling, occupational evidence provided by a VE generally should be consistent with the occupational information supplied by the DOT. *Id.* As part of the ALJ's duty to fully develop the record of a hearing, when there is an apparent unresolved conflict between the VE evidence and the DOT, the ALJ must obtain a reasonable explanation for the conflict before relying on the VE's evidence to support a determination regarding disability. *Id.*

More specifically, SSR 00–4p requires that:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

*Id.*

Relying on this provision, Plaintiff essentially contends that all the jobs the ALJ determined the Plaintiff could perform expose Plaintiff to "hazardous machinery," which is expressly prohibited by the RFC. (*Id.* at 6.) Defendant, in turn, argues that the ALJ properly assessed whether Plaintiff could perform jobs existing in significant numbers in the national

13

economy and that substantial evidence supports his decision. (Docket Entry 16 at 5-10.)

Plaintiff's claim fails for a number of reasons. First, the ALJ's hypothetical to the VE accurately reflected the hazardous machinery limitation contained in the ALJ's RFC finding and the ALJ found the VE's testimony to be credible and supported by record evidence. (Tr. 12-13; 42.) *See Traxler v. Astrue*, No. 8:08-3141-RBH, 2010 WL 1257544, at *6 (D.S.C. Feb. 1, 2010) (unpublished) (rejecting argument of apparent conflict between the VE's testimony that Plaintiff—who was limited to a sit/stand option—could work as an optician's assistant and the DOT's description of that position, where the DOT was silent on the sit/stand restriction and the ALJ's hypothetical expressly included a sit/stand restriction). Moreover, despite Plaintiff's argument to the contrary (Docket Entry 11 at 4-5), the ALJ complied with his duty under the Social Security Rulings by asking the VE whether his testimony was consistent with the DOT. (Tr. 43.) The VE responded that his "descriptions of these jobs [were] consistent with how they're described in the *Dictionary of Occupational Titles*." (*Id.*) *See Ayscue v. Astrue*, No. 5:08–CV–595–FL, 2009 WL 3172121, at * 14 (E.D.N.C. Oct. 2, 2009) (unpublished) ("In this case, the VE testified that her determination was consistent with the DOT. Thus, the ALJ was not required to elicit a 'reasonable explanation' from the VE.") (internal citation omitted). Plaintiff's counsel failed to present any conflicts through cross-examination, indicating there was no apparent misunderstanding on the issue. *See Sterling v. Comm'r of Social Security*, Civil Action No. 06–1868, 2008 WL 594503, *5 (W.D. La. Feb. 3, 2008) (affirming ALJ's reliance on VE's testimony as consistent with the DOT because, among other reasons, claimant's counsel "did not cross-examine the expert concerning any purported discrepancies in her testimony").

Therefore, nothing at the hearing triggered the ALJ to elicit a "reasonable explanation" for any possible conflict and the ALJ was entitled to rely on the VE's testimony.[8]

Second, Plaintiff's argument that the jobs referenced by the VE and ALJ require Plaintiff to be near "hazardous machinery" is unconvincing. Neither party attempts to define the term "hazardous." Nevertheless, Social Security Ruling 96–9p ("SSR 96-9p") has defined the term "hazard" to include "moving mechanical parts of equipment, tools, or machinery; electrical shock; working in high, exposed places; exposure to radiation; working with explosives; and exposure to toxic, caustic chemicals." SSR 96-9p, *Determining Capability to Do Other Work—Implications of a RFC for Less Than a Full Range of Sedentary Work*.[9]

---

[8] *See also Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009) (concluding that when an adjudicator asks the VE whether there is a conflict between the VE's testimony and the DOT, and the VE credibly testifies that there is no conflict, the adjudicator may rely on the VE's testimony).

[9] *See, e.g., Duncan v. Astrue*, No. C12–546–MJP–JPD, 2012 WL 5877510, *5 (W.D. Wash. Nov. 1, 2012) (unpublished) ("Despite Plaintiff's suggestion that a torch, in particular, should be classified as hazardous machinery, the ALJ clearly included a hazardous machinery limitation in her hypothetical, and thus the VE was aware of that limitation and yet testified that a person with that limitation could nonetheless perform the duties of a fitter/welder. This testimony is consistent with the DOT, which provides that exposure to DOT-defined 'hazards' are not present in the fitter/welder position. None of the DOT-defined 'hazards' necessarily include a torch, crane, or truck.") (internal citations omitted); *Malgra v. Astrue*, No. ED CV 11-0724-SP, 2012 WL 443741, *3-4 (C.D. Cal. Feb. 10, 2012) (unpublished) (concluding that "contrary to plaintiff's contention, there is no inconsistency between the DOT and plaintiff's RFC precluding him from working around 'hazardous' machinery" where the job in question "does not require work[ing] around" the hazards described in SSR 96–9p) (internal citations omitted); *Norwood v. Astrue*, No. CV 09–3996–RC, 2010 WL 2509358, *6 (C.D. Cal. June 17, 2010) (unpublished) ("[T]here is a significant difference between machinery and 'hazardous machinery,' which refers to moving mechanical parts, of equipment, tools, or machinery [and] [s]ince neither the 'assembler' job nor the 'packer' job requires exposure to 'hazardous machinery,' the failure to include [a] limitation precluding 'concentrated exposure to hazards' in the hypothetical question to the [VE] was, at most, harmless error.") (internal citations omitted).

15

Here, none of the jobs at issue require the Plaintiff's proximity to the hazards set forth in SSR 96-9p. For example, a light fixture assembler:

> [a]ssembles metal lighting fixtures, using handtools and drill press: Screws together threaded parts by hand. Bores holes in fixtures, using drill press. Fastens together parts with bolts or screws by hand, or using tools, such as wrenches and screwdrivers. Inserts wire into fixture. May work from blueprints or sketches.

DOT 723.684–018, Assembler II (Lighting Fixtures Industry), 1991 WL 679521. Plaintiff contends that the requirement that a worker "[b]ore[] holes in fixtures, using [a] drill press" means that this position would require him to work near hazardous machinery. (Docket Entry 11 at 5.) Nevertheless, the job description for this position does not indicate that any of the hazards set forth in SSR 96-9p are present. DOT 723.684–018, Assembler II (Lighting Fixtures Industry), 1991 WL 679521 ("Moving Mech. Parts: Not Present . . . Electric Shock: Not Present . . . High Exposed Places: Not Present . . . Radiation: Not Present . . . Explosives: Not Present . . . Toxic Caustic Chem.: Not Present . . . .").

Next, a small products assembler:

> [p]erforms any combination of following duties to assemble parts of various materials, such as plastic, wood, metal, rubber, or paperboard, to produce small products, such as roller skates, toys, shoe lasts, musical instrument parts, or loudspeakers: Positions parts in specified relationship to each other, using hand, tweezers, or tongs. Bolts, screws, clips, cements, or otherwise fastens parts together by hand, using handtools, portable powered tools, or bench machines. Performs fastening, force fitting, or light cutting operations, using machines such as arbor presses, punch presses, taps, spot-welding or riveters.

16

DOT 739.687–030, Assembler, Small Products II, 1991 WL 680180. Plaintiff contends that hazardous machinery is involved in "[b]olt[ing], screw[ing], clip[ing], cement[ing], or otherwise fasten[ing] parts together by hand, using handtools, portable powered tools, or bench machines." (Docket Entry 11 at 5.) Plaintiff contends further that he would be near hazardous machinery if he were obliged to "Perform[] fastening, force fitting, or light cutting operations, using machines such as arbor presses, punch presses, taps, spot-welding or riveters." *Id.* Again, however, the job description for this position does not indicate that any of the hazards set forth in SSR 96-9p are present. DOT 739.687–030, Assembler, Small Products II, 1991 WL 680180 ("Moving Mech. Parts: Not Present . . . Electric Shock: Not Present . . . High Exposed Places: Not Present . . . Radiation: Not Present . . . Explosives: Not Present . . . Toxic Caustic Chem.: Not Present . . . .").

As for a bench assembler, that position requires a worker to:

> Perform[] any combination of following repetitive tasks on assembly line to mass produce small products, such as ball bearings, automobile door locking units, speedometers, condensers, distributors, ignition coils, drafting table subassemblies, or carburetors: Positions parts in specified relationship to each other, using hands, tweezers, or tongs. Bolts, screws, clips, cements, or otherwise fastens parts together by hand or using handtools or portable powered tools. Frequently works at bench as member of assembly group assembling one or two specific parts and passing unit to another worker. Loads and unloads previously setup machines, such as arbor presses, drill presses, taps, spot-welding machines, riveting machines, milling machines, or broaches, to perform fastening, force fitting, or light metal-cutting operation on assembly line. May be assigned to different work stations as production needs require or shift from one station to another to reduce fatigue factor. May be known according to product assembled.

17

DOT 706.684-022, Assembler, Small Products I (Bench Assembler), 1991 W L 679050. Plaintiff contends that the requirement that a worker "[l]oad[] and unload[] previously setup machines, such as arbor presses, drill presses, taps, spot-welding machines, riveting machines, milling machines, or broaches" would necessarily bring him into contact with hazardous machinery. (Docket Entry 11 at 5-6.) However, the job description for this position does not indicate that any of the hazards set forth in SSR 96-9p are present. DOT 706.684-022, Assembler, Small Products I (Bench Assembler), 1991 W L 679050 ("Moving Mech. Parts: Not Present . . . Electric Shock: Not Present . . . High Exposed Places: Not Present . . . Radiation: Not Present . . . Explosives: Not Present . . . Toxic Caustic Chem.: Not Present . . . .").

Finally, an assembler of electrical accessories:

> Assembles mechanical parts of electrical equipment, such as light sockets, switches, terminal boards, and plugging devices: Fits together parts, such as socket bases, shafts, contact fingers, and springs, in specified sequence, using fixtures, screwdrivers, and air nut runners. Tests actions of moving parts and listens for unusual sounds to detect defective parts or faulty operation. Verifies completed assembly against pictorial drawings.

DOT 729.687-010, Assembler, Electrical Accessories I, 1991 WL 679733. Plaintiff does not address this occupation in his brief. Yet, like the other three positions described above, the job description for this position does not indicate that any of the hazards set forth in SSR 96-9p are present. *Id.* ("Moving Mech. Parts: Not Present . . . Electric Shock: Not Present . . . High Exposed Places: Not Present . . . Radiation: Not Present . . . Explosives: Not Present . . . Toxic Caustic Chem.: Not Present . . . .").

18

And, even assuming for the sake of argument, that the machinery Plaintiff references above is hazardous machinery, Plaintiff would still not prevail. This is because the job descriptions for two of the four jobs described above (small products assembler and bench assembler) indicate that a worker may perform "any combination" of a long list of tasks, meaning that Plaintiff could perform tasks that do not involve any hazardous machinery.[10] Consequently, at the very least, the VE did not contradict these DOT listings. As noted above, the VE testified that there were 4,000 jobs in North Carolina for a small product assembler alone. Thus, there are still a significant number of jobs available to Plaintiff, even assuming some of the jobs described above make use of hazardous machinery. For all these reasons, Plaintiff's claim fails.

---

[10] *See Mataraza v. Astrue*, 2012 WL 5996072, *11 (N.D. Ohio Nov. 7, 2012) (unpublished) ("And while the job of wire worker in the DOT discusses the use of soldering equipment, which Plaintiff contends is dangerous and thus is also precluded by his RFC, the description does not indicate that soldering is required in every instance of a wire worker's job, as it states that a wire worker '[p]erforms any combination of following tasks involved in cutting, stripping, taping, forming, and soldering wires or wire leads.'") (citation omitted); *Gleason v. Astrue*, No. EDCV 12–649–MLG, 2012 WL 4356244, *5 (C.D. Cal. Sept. 21, 2012) (unpublished) ("[T]he DOT description for both kitchen helper and packer state that workers perform 'any combination' of the tasks listed, but do not state that a worker is required to perform all of them. Both job descriptions include multiple tasks that do not involve the use of a machine.") (internal citations omitted); *Dumble v. Astrue*, No. EDCV 11–266–OP, 2011 WL 4502086, *6 (C.D. Cal. Sept. 28, 2011) (unpublished) ("[A]lthough the job description states that a hand packager performs 'any combination' of the tasks listed in the DOT, it does not state that a worker is required to perform all of them."); *Wafford v. Comm'r of Soc. Sec.*, No., 1:09cv00805, 2010 WL 5421303, *5 (S.D. Ohio Aug. 19, 2010) (unpublished) ("[P]laintiff contends that some of the jobs would involve hazardous machinery or would expose him to unprotected heights, but that is not supported by the DOT. Some DOT listings describe machinery used in the process, but also provide that a worker may perform any combination of a long list of tasks, meaning that plaintiff could perform tasks that do not involve any hazardous machinery. Thus, the VE did not necessarily contradict the DOT listings, but instead provided more specific job information.").

Case 1:10-cv-00925-TDS-JLW Document 17 Filed 04/09/13 Page 19 of 20

## VI. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, this Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Docket Entry 10) be **DENIED**, Defendant's Motion for Judgment on the Pleadings (Docket Entry 15) be **GRANTED** and the final decision of the Commissioner be upheld.

_____
Joe L. Webster
United States Magistrate Judge

Durham, North Carolina
April 8, 2013